Bell and another, Respondents, vs. Peterson, Administrator, and others, Appellants.

*November 10, 1899 — February 27, 1900.*

*Ejectment: Statutes: "May" construed "must:" Tax deeds: Practice: Estoppel: Tax certificates:* Bona fide *purchase: Lis* pendens: *Misnomer of plaintiff:* Res adjudicata.

1. Sec. 3074, Stats. 1898, provides that, where either party to an action for the recovery of real property shall, during the pendency thereof, acquire the right to the possession of the premises, the party acquiring such right "may" have the action continued, and judgment entered according to the rights of the parties as they shall appear at the time of the trial. *Held,* that a defendant in ejectment, claiming title under a tax deed, who procures additional tax deeds during the pendency of the action, *must,* in order to make such newly procured tax deeds available in support of his title, present them in that action, and failing to do so, is estopped from afterwards claiming title thereunder. Bardeen, J., dissents.

2. The purchaser of a tax certificate or a tax title is not a *bona fide* purchaser: he buys under the rule *caveat emptor;* hence notwithstanding no notice of *lis pendens* was filed in an action of ejectment against a tax-title claimant, a subsequent purchaser from such claimant is bound by the judgment rendered in that action.

3. In the former action a mistake in one of the initials of the defendant's name is without significance, where he raised no question as to his being the rightful defendant and answered on the merits; and the court could, without notice, thereafter correct such mistake.

4. Where, in the former action, title has been adjudged, as against the grantor of defendant, to be in plaintiff's grantor, such judgment is to be considered with reference to the pleadings in that action, and to be held as broad as the issues raised thereby, upon which the court passed or might have passed in reaching the final conclusion in the case, and hence, in a subsequent action, the judgment is *res adjudicata* as to a deed in plaintiff's chain of title, of record before that time.

Appeal from a judgment of the circuit court for Marinette county: S. D. Hastings, Jr., Circuit Judge. *Affirmed.*

*J. B. Fairchild,* of counsel, for the appellants.

Bell and another vs. Peterson and others.

For the respondents there were briefs by *Eastman & Martineau*, and oral argument by *P. H. Martineau*.

The following opinion was filed December 15, 1899:

CASSODAY, C. J. This is an action of ejectment, commenced March 27, 1896. The plaintiffs claim title in fee under patent from the United States. The complaint is in the statutory form. The answer alleges ownership in fee and right to possession under a quitclaim deed to Peter Peterson, deceased, executed November 13, 1894, and recorded January 11, 1895, from one J. P. Mork, and three tax deeds from the county to Mork, one dated May 21, 1887, based on the sale of 1884 for the taxes of 1883, and recorded May 21, 1887, and two other deeds, dated July 3, 1889, one based on the tax sale of 1885 for the taxes of 1884, and recorded October 19, 1889, at 2:50 p. m., and the other based on the tax sale of 1886 for the taxes of 1885, and recorded October 19, 1889, at 2:50 p. m.; and further alleges that, at the time of the execution and delivery of each of such tax deeds, the land in question was wholly vacant and unoccupied, and so remained until the defendant, Peter Peterson, took possession, March 23, 1896; that the defendant purchased the land for a full consideration, in good faith, believing that Mork had a complete and undisputed title to convey; and pleads the three-years statute of limitations as to each of such tax deeds, claiming the benefit of sec. 1188, Stats. 1898, and all other statutes of limitation applicable to the facts.

A jury being waived and trial had, the court found as matters of fact, in effect, that the three tax deeds and the quitclaim deed mentioned in the answer were executed, delivered, and recorded as therein stated; that the land was wholly vacant and unoccupied for more than three years after October 19, 1889; that June 15, 1889, the then owners of the patent title to the land commenced an action against G. P. Mork, intending thereby to sue J. P. Mork, and served

the summons personally on J. P. Mork, who appeared in the action under his correct name; that the complaint therein was served June 26, 1889, and was in the usual statutory form; that Mork served his answer to such complaint October 7, 1889, in which he denied generally the allegations of the complaint, and set up the execution, delivery, and recording of the first tax deed mentioned; that October 19, 1889, immediately after the noon recess, a jury having been waived, and no supplemental answer having been filed or made, the case was tried before the court, without a jury, upon the issues made by such complaint and answer therein, and the court, upon the conclusion of that trial, made and filed its findings of fact and conclusions of law, wherein it was found that the plaintiffs were, and ever since December 9, 1887, had been, the owners in fee of the premises described in the complaint, but made no order based upon the provisions of sec. 3087, S. & B. Ann. Stats., then in force; that October 24, 1889, a formal judgment was entered and filed in that action, adjudging that the plaintiffs therein have and recover from the defendant Mork the possession of the premises and $48.31 costs, but it did not specify the estate established on the trial by the plaintiffs, nor adjudge that the plaintiffs therein had any estate or title in or to the premises; that such judgment was entered in the judgment and decree journal October 24, 1889, and the same day was docketed and recorded at length in the court record; that May 17, 1897, an order was made in that action by the court, but without notice, that the defendant's name be corrected in the judgment and docket thereof so as to read J. P. Mork, instead of G. P. Mork, as then appeared, and thereafter the initial " G " was erased from Mork's name, wherever it appeared in the record, and the letter " J " substituted therefor; that no mention was made on the trial of that action against Mork of the two tax deeds dated July 3, 1889; that the plaintiffs in that action did not file any notice of the pend-

ency thereof, nor did they record such judgment in the office of the register of deeds; that the defendant, Peter Peterson, since deceased, purchased the premises in good faith, and without actual notice of such judgment.

And as conclusions of law the court found, in effect, that the plaintiffs herein are the owners in fee of the premises, and entitled to the possession thereof; that the judgment of October 24, 1889, against Mork, was conclusive as between the parties to this action; that Mork had no title to the land by virtue of any tax deed he then held upon it, and could acquire none by virtue of any tax certificates then held by him on the land; that Mork had no title to the land at the time he attempted to convey the same to Peter Peterson, and that Peter Peterson acquired no title thereto by his conveyance from Mork; that Peter Peterson wrongfully withheld possession of the premises from the plaintiffs; that the plaintiffs were entitled to judgment adjudging them to be the owners in fee simple of the premises, and that they recover from Peter Peterson, since deceased, the possession thereof, with six cents damages and costs. From the judgment entered thereon accordingly, Peter Peterson, since deceased, brought this appeal.

The principal question discussed is whether the defendant's intestate, claiming title by deed from Mork, is estopped by the judgment in ejectment against Mork, entered October 24, 1889, to claim title to the land by virtue of either of the tax deeds issued to Mork prior to the entry of that judgment. As indicated, one of those tax deeds was issued two years prior to the commencement of that action, and the other two deeds were issued eighteen days after the commencement of that action, and more than three months prior to the time when Mork served his answer to the complaint in that action. It was held by this court, more than twenty-five years ago, in effect, that, in order to recover, a plaintiff in ejectment was only required to prove title and

right to possession at the commencement of the action; that
under a general denial the defendant could not introduce
evidence of facts which occurred after the commencement
of the action, whereby the plaintiff had lost and the defend-
ant had acquired title to the land; that the trial court might,
under the statutes (sec. 2687, Stats. 1898), in its discretion,
and upon terms, grant leave to the defendant, on his appli-
cation therefor, to set up such facts by way of supplemental
answer; but that, if leave for that purpose was not asked
for nor granted, the judgment for the plaintiff would not
bar a subsequent action by the defendant to assert title so
acquired by him after the commencement of such former
action. *McLane v. Bovee*, 35 Wis. 27. The statutes under
which that decision was made provided that no person could
recover in such an action, unless he had, at the time of com-
mencing the action, a right to recover, etc. Secs. 2, 8, ch.
141, R. S. 1858, and secs. 3074, 3079, R. S. 1878. That ac-
tion was commenced May 15, 1871. The plaintiff claimed
title by virtue of a patent issued by the United States dated
May 20, 1870. The defense tendered was that the plaintiff
was estopped by a judgment entered July 18, 1868, in favor
of Bovee and against McLane, which had been affirmed by
this court. *Bovee v. McLean*, 24 Wis. 225. The case was
tried in 1872, and the court found that the former judgment
was no bar to McLane's recovery, based upon such patent
so issued after the judgment in the former action. The stat-
utes under which that case was decided were materially
modified by an act entitled "Actions for the recovery of real
property and to encourage the *payment of taxes and to dis-
courage litigation*" (ch. 270, Laws of 1874). That statute
was rewritten, and incorporated into the revision of 1878 as
sec. 3087. The section was subsequently modified by ch.
305, Laws of 1880, and since incorporated in the statute (sec.
3087, S. & B. Ann. Stats. and Stats. 1898). Since those
enactments, the legislature has enacted that, "If either party

shall, during the pendency of the action, acquire the title and right to the possession of the premises in controversy, the party acquiring such title and right of possession *may*, on paying or tendering to the opposite party all costs which have accrued up to the time of making such tender or payment, have said action continued and judgment may be entered according to the rights of the parties as they shall appear at the time of the trial." Ch. 252, Laws of 1885 (sec. 3074, S. & B. Ann. Stats. and Stats. 1898).

Whatever may be the rule in ordinary actions of ejectment, yet, after careful consideration, we have reached the conclusion that whenever a plaintiff is entitled to recover by reason of a defective tax deed or tax proceeding, under which the defendant claims title, as prescribed in sec. 3087, and such defendant is entitled to an allowance for or on account of taxes, as therein prescribed, or has, during the pendency of such action, acquired the title or right to the possession of the premises, then, as to such defendant, the word "may," in sec. 3074 of the statute quoted, is to be construed as "must;" in other words, Mork, claiming title under the tax deed of 1887, could not, after the action was commenced against him June 15, 1889, and during its pendency, acquire new tax certificates and new tax deeds, and hold them until after the trial of that action and his tax deed of 1887 had been adjudged therein to be void, and then assert title and the constructive possession of the land by virtue of such new tax deeds. On the contrary, when his tax deed of 1887 was thus challenged, and he thereupon acquired such new tax certificates and new tax deeds, during the pendency of that action he was bound, in order to make them available in support of his claim of title, to present them for determination "according to the rights of the parties" in that action, as prescribed by the statute quoted; and, failing to do so, he was estopped from acquiring any title or right to possession by virtue of such new tax deeds. As said in a recent

Bell and another vs. Peterson and others.

decision of this court, sec. 3087 " pretty clearly shows a legis-
lative intent to have such judgment conclude all further
controversy as to any claim or claims by such defendant on
account of any of such taxes. To allow such defendant, when
beaten upon one tax deed, to take a new one, or several new
ones, upon tax certificates held by him at the time, and then
to have a new trial as to the validity of each of the new
deeds, would defeat the very object of the law. Of course,
what is thus said has no reference to the absolute right to a
new trial in actions of ejectment given by statute. R. S.
1878, sec. 3092." *Cook v. McComb*, 98 Wis. 530.

The defendant's intestate, Peter Peterson, claiming title
under a quitclaim deed from Mork dated November 13, 1894,
is bound by the judgment in the suit against Mork, notwith-
standing no notice of *lis pendens* was filed in that action.
*Brown v. Cohn*, 95 Wis. 90. Sec. 3187, said Mr. Justice
NEWMAN in that case, " evidently was intended to apply to
only a part of the cases to which the doctrine of *lis pendens*
applies. It has no negative words or repealing clause. It
was evidently intended to be supplemental to the common
law, and not to repeal it. So the common law will govern in
all cases not covered by the statute. It has been held by
this court that the object of that statute is to conclude sub-
sequent *bona fide* purchasers or incumbrancers *pendente lite*
by a constructive notice. The filing of the notice is not nec-
essary where the subsequent purchaser has actual notice, or
where he is not a *bona fide* purchaser. . . . The pur-
chaser of a tax certificate or a tax title is not a *bona fide*
purchaser. He buys under the rule *caveat emptor*. He takes
the title subject to its infirmities. He knows that such a
title grows out of proceedings hostile to the real owner, by
which it is sought to divest him, *in invitum*, of his title, and
that such title is liable to be defeated by whatever irregu-
larities or omissions may be in the proceedings. . . . *Lis
pendens* binds both parties and privies. A purchaser *pen-*

*dente lite* is assumed to have notice of the proceedings, because he is bound to take notice of the proceedings of the courts." 95 Wis. 93, 94.

The mere fact that in the complaint against Mork there was a mistake as to one of the initials of his name is without significance. He raised no question as to his being the rightful defendant, but answered upon the merits, and hence waived the technical misnomer. Sec. 2654, Stats. 1898. The court properly disregarded it, and entered judgment, and subsequently corrected it. Sec. 2829, Stats. 1898.

The defendant invokes the familiar rule that in this action of ejectment the plaintiffs must recover, if at all, upon the strength of their own title, and not upon the weakness of the defendant's title. It is contended that in the chain of title from the United States to the plaintiffs there is the record of a deed from the Sturgeon Bay & Lake Michigan Ship Canal & Harbor Company to Spencer A. Coleman, purporting to have been executed and recorded in April, 1880, but which was defectively executed, or at least defectively acknowledged, so that the record was not properly admitted in evidence, even if the original deed would have been admissible. But, without determining that question, we think the judgment of October 24, 1889, against Mork and in favor of Bartels and Rosenberry, is *res adjudicata* as to their title at that time. In that case the court found, as matters of fact, that Bartels and Rosenberry were, and ever since December 9, 1887, had been, the owners in fee of the premises described, and that Mork had wrongfully withheld the possession thereof since the date last mentioned; and, as conclusions of law, that Bartels and Rosenberry were entitled to judgment that they recover from the defendant the possession of the premises, with costs. The judgment therein was to the effect that Bartels and Rosenberry do have and recover from the defendant, Mork, the possession of the premises described, with costs. True, that did not expressly

declare that Bartels and Rosenberry were the owners in fee
of the premises as thus determined by the findings; never-
theless we think it impliedly so adjudges. As stated by Mr.
Justice Marshall in a recent case in determining the effect
of a judgment in ejectment: "The court is not confined to
the words of the judgment alone, any more than if called
upon to determine the effect of a judgment in applying the
doctrine of *res adjudicata*. In other words, the judgment
is to be considered with reference to the pleadings, and held
to be as broad as the issues raised thereby upon which the
court passed or might have passed in reaching the final con-
clusion in the case." *Rupiper v. Galloway, ante,* p. 4. See,
also, the opinion of Mr. Justice Dodge in *Emerson v. Pier,
ante,* p. 161, and where substantially the same question as
here involved was determined adversely to the defendant.
There is no question but that the chain of title from Bar-
tels and Rosenberry to the plaintiffs herein is complete, as
appears from the evidence.

*By the Court.*— The judgment of the circuit court is af-
firmed.

Bardeen, J.   I yielded reluctant assent to that part of
the opinion in *Cook v. McComb,* 98 Wis. 526, which held
that a defeated tax-title claimant in an ejectment action
must bring in and surrender tax certificates held by him
other than those involved in the deed set aside. It may be
rather late now to express any dissent from that conclusion.
The application of that decision to the facts in this case,
however, leaves me at liberty to enter such protest as my
sense of duty suggests.   In the former action, referred to
in the opinion, the plaintiffs recovered because of the in-
validity of the Mork tax deed. At the time the action was
commenced, Mork had no claim against the land except his
tax deed. At a later date he purchased, as he had a per-
fect right to do, two outstanding tax certificates. These

certificates, by operation of law and lapse of time, might ripen into tax deeds. They were a lien upon the land, entirely separate and distinct from the title in litigation. The invalidity of the tax deed under which Mork claimed was determined, and judgment for plaintiffs was entered, without any order being made as to payment of the tax for which the lands were sold, or the expenses of sale, or as to any taxes paid by the defendant. The entry of such an order was clearly a condition precedent to the right to the judgment that was entered. *Wis. Cent. R. Co. v. Comstock*, 71 Wis. 88. It was as clearly the plaintiffs' duty to cause such order to be entered. Instead of doing so, they entered the ordinary judgment in ejectment. Mork was afforded no opportunity to present his tax certificates or make claim for any taxes paid by him. Taking a judgment they were not entitled to, the plaintiffs left it within the power of Mork to secure title upon the tax certificates he then held. It is only when the opportunity is offered for the defendant to present his tax claims that the rule in the *Cook Case* can apply. The judgment in that action was of no binding force upon the inchoate lien held by Mork under his tax certificates, unless such an opportunity was afforded as made it his imperative duty to prove them up for redemption. The plaintiffs having taken a judgment without according him that privilege, in my judgment he had a perfect right to hold and retain his certificates, and perfect his title to the land. He was under no obligation to appeal or contest the case further. He had a right to accept the situation tendered by the plaintiffs, and, if he could, procure title to the lands under his tax certificates, which he had purchased after the suit was commenced. He took his deeds while the action was pending, but did not record them until the day judgment was rendered. In the meantime they were subject to redemption, and, if he had set them up by supplemental answer, they would have constituted no defense to

Bell and another vs. Peterson and others.

the action. If the proper order had been entered on the day judgment was rendered, under the *Cook Case* it would have been his absolute duty to have brought in all his tax claims in that suit. Now, it is said that under sec. 3074, Stats. 1898, it was Mork's duty to have set up his deeds by supplemental answer in that suit. Not having done so, he is barred; and this construction of the statute is said to be based upon a proper consideration of sec. 3087 in connection therewith. As I have already noted, sec. 3087 can have no application to the facts presented, because Mork never had any opportunity to avail himself of the terms of that statute. But there is a much stronger reason why the conclusion reached is wrong. The statute (sec. 3074) says: "Provided, that if either party shall, during the pendency of the action, acquire the title and *right to the possession* of the premises in controversy, the party acquiring such title and *right to the possession* may, on paying or tendering to the opposite party all costs which have accrued up to the time of making such tender or payment, have such action continued and judgment may be entered according to the rights of the parties as they shall appear at the time of the trial." Up to the very time judgment was rendered, Mork had no *right to the possession* of the premises in controversy under his subsequent tax deeds. This court has many times decided that an unrecorded tax deed does not draw to it constructive possession of the land described therein. *Hewitt v. Week*, 59 Wis. 444; *Cornell University v. Mead*, 80 Wis. 387. In the latter case it was said by the present chief justice: "The lands were wild and unoccupied during the time in question. The mere execution and delivery of the tax deed did not vest in the defendant the title or possession of the land, nor give him the right to maintain ejectment therefor." In this case the lands were wild and unoccupied. At no time before judgment was rendered was Mork in a position where he could assert the *right to possession* to this

Clifford and another vs. Minneapolis, St. Paul & Sault Ste. Marie R. Co.

land under his new tax deeds, and hence he did not come within the terms of the statute. The statute is plain, and requires no construction. It says that when either party secures, during the pendency of the litigation, "*the title and right to possession,*" he *may* make a tender or payment of costs, and thus become enabled to set up such rights. No reason is suggested why the word *may* should be construed to be imperative, except as its significance is supposed to rest upon sec. 3087. I am quite unable to see any reason for such construction in this case, and hence enter this protest against the conclusion reached by the majority of the court.

A motion for a rehearing was denied February 27, 1900.