PINKERTON, Respondent, vs. J. L. GATES LAND COMPANY, Appellant.

*March 27—July 3, 1903.*

*Tax sales: Validity: Affidavit of publication of notice: Ejectment: Plaintiff's recovery on defects in tax title: Amount payable as condition of judgment.*

1. Under sec. 1130, Stats. 1898 (providing that notice of a tax sale shall be published four successive weeks), and sec. 1132 (providing that the printer who publishes such notice shall, immediately after the last publication thereof, transmit to the treasurer of the proper county an affidavit of such publication made by some person to whom the fact of publication shall be known; and that no printer shall be paid for any such notice who shall fail so to transmit such affidavit within six days after the last publication thereof), a notice of a tax sale was published five times,' but the last insertion in the newspaper was less than one week prior to the sale. The affidavit of the publication of such notice was transmitted to the treasurer within six days after the fifth insertion, but more than six days after the fourth. *Held*, that the fifth publication, being less than a week prior to the sale, could not be regarded .as a legal publication within the meaning of sec. 1130, and must be rejected as mere surplusage.

2. In such case, there being a failure to transmit the affidavit of the printer within the time required under sec. 1132, the county was not liable for the printer's fees for publication, and hence the printer's fee of twenty-five cents included in the amount for which a parcel of land was sold was improperly included, and rendered the sale void.

3. Where, in the absence of any statutory authority, lands were sold for five per cent. in excess of the amount of taxes and charges for which they were liable, such excess is illegal, and the sale void.

4. Sec. 3087, Stats. 1898, provides, where a plaintiff in ejectment is entitled to recover because of a defect in a tax title under which defendant claims, he shall be required, as a condition to judgment, to pay the amount for which the land was sold and costs of sale. Sec. 3088 provides that a judgment in ejectment shall be conclusive as to title upon the party against whom it is rendered and all claiming under him. In ejectment against the holder of a tax title plaintiff was held entitled to

recover by reason of defects in the tax proceedings. *Held*, that the fact that the tax proceedings were illegal did not relieve the plaintiff from paying the amounts imposed by the statute as a condition of his recovery.

APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Reversed*.

This is an action of ejectment, commenced November 9, 1901, to recover 760 acres of land described. The complaint is in the statutory form. The defendant answered by way of admissions, denials, counter allegations, and a counterclaim. At the close of the trial the court found, in effect:

(1) That the plaintiff claims title through mesne conveyances under patents from the United States, and has all the former title to all of the lands, and all the interest and title therein, unless he has been devested by one or more of the five tax deeds under which defendant claims title.

(2) The first tax was issued to Price county March 29, 1899, for the taxes of 1894 on the sale of 1895, and recorded March 29, 1899. The second tax deed was issued to Price county June 22, 1899, for the tax of 1895 on the sale of 1896, and recorded June 23, 1899. October 17, 1899, Price county sold and conveyed by quitclaim deed the lands covered by such tax deeds to the defendant, and the same was recorded on that day, in pursuance of an agreement hereinafter mentioned. The third tax deed was issued to the defendant November 14, 1900, for the tax of 1896 on the sale of 1897, to Price county, and the tax certificates therefor were sold and assigned by the county to the defendant; and the third tax deed was issued thereon to the defendant and recorded November 14, 1900. The fourth tax deed was issued to the defendant June 8, 1901, for the tax of 1897 on the sale of 1898, to Price county, and the tax certificates therefor were sold and assigned by the county to the defendant; and the fourth tax deed was issued thereon to the defendant and recorded June 8, 1901. The fifth tax deed was issued to the

defendant May 17, 1902, for the tax of 1898 on the sale of 1899, to Price county, and the tax certificates therefor were sold and assigned by the county to the defendant; and the fifth tax deed was issued thereon to the defendant and recorded May 17, 1902.

(3) The plaintiff has established, by proof, the following defects in the proceedings antecedent to the issuing and recording of said tax deed: (a) None of the delinquent tax rolls returned for the years 1894 (sale 1895), 1895 (sale 1896), 1896 (sale 1897), 1897 (sale 1898), and 1898 (sale 1899) were signed by the treasurer. (b) The affidavits of the treasurers to the respective delinquent tax rolls (except for 1895) were not in the form prescribed by sec. 1113, Stats. 1898. The column of the year for which the taxes were due was left blank, and the rolls were not filed in the office of the county clerk until June 15, 1899. (c) The statements required to be made by the county treasurer on the first Monday of April in each year—as more fully prescribed in sec. 1130, Stats. 1898—were not made on that day, and were not filed in the office of the county clerk, for the sales of 1895, 1896, and 1897; and such statements for the sales of 1898 and 1899 were not so filed until November 27, 1901. (d) No proofs of publication of notice of sale for 1895, 1896, 1897, 1898, and 1899 were made and filed as required by sec. 1130, *supra;* that certain affidavits were filed which failed to show that the "statement," as well as the "notice," was published, and also failed to show that the publications were had "once in each week" for four successive weeks, and failed to show that the Phillips Bee, in which said pretended notice purported to have been published, was a newspaper that had been regularly and continuously published in that county once in each calendar week for at least two years immediately before the date of such notice, and that no such publications were had. (e) None of the tax rolls, delinquent returns, and stub books, on which the sales of 1895, 1896, 1897, 1898, and

1899 were based, were filed in the office of the county clerk until June 15, 1899. (f) The county treasurer's statement of sale for said five years' sales stated that the annexed statement of lands contained descriptions of lands sold, names of persons to whom sold, amounts for which the same were sold, and the names of owners as far as known; whereas, in fact, said statement only contained one column of names, without any heading, so that it was uncertain whether said column was intended for the names of persons to whom sold or for the names of owners of said lands. (g) The list and notices of expiration of the time to redeem were not made and published as required by sec. 1170, Stats. 1898. The affidavit of such publication fails to state that the list, as well as the notice, was published, and also fails to state that the same was published once a week for twelve successive weeks, and fails to show that the "Bee," in which the publication purported to have been made, had been regularly and continuously published once in each calendar week for the last two years immediately before the date of such notice. (h) All of the defects were found in all the sales on which the said five tax deeds under which the defendant claims title were based.

(4) It appears from the findings of the court, or is undisputed, that May 23, 1899, a proposition was made by James L. Gates to Price county to purchase all lands of which it held tax deeds and pay therefor in cash at the rate of $10 per forty acres, or twenty-five cents per acre, and also all tax certificates in the treasurer's office for the sales of 1897, 1898, and 1899, and pay therefor seventy-five cents on the $1 for all legal tax certificates. May 24, 1899, the county board passed a resolution accepting such proposition, provided that the lands should be paid for within three days after the deeds should be tendered, and all assignments of certificates be paid for within three days after tender of the same. "All conveyances and assignments to be made to *J. L. Gates Land Company*." Stipulations were made from time to time as to

when payments were to be made and security given, and deeds and assignments delivered. October 16, 1899, the county treasurer had computed the amount of tax certificates so agreed to be purchased at seventy-five per cent. of their face value at $11,003.85, and for the lands covered by the first and second tax deeds mentioned, at twenty-five cents per acre, at $20,829.95—making in all, $31,833.80; and pursuant to such agreement the county executed and delivered to the defendant the quitclaim deed of October 17, 1899, above mentioned. The lands involved in this action are a part and parcel of the lands described in such quitclaim deed; and the third, fourth, and fifth tax deeds mentioned were issued to the defendant upon tax certificates so purchased by the defendant from the county. The allegations of the reply to the counterclaim in respect to the illegality of such purchase by the defendant from the county of the lands in question are true; and, among other things, such purchase was void, because (1) the sale was executory; (2) because a part of the consideration was that the defendant would pay the taxes for 1900, 1901, 1902, and 1903; (3) because a large amount of the lands included in the quitclaim deed were not then held by the county under tax deeds, but only under tax certificates; (4) because the three tax deeds taken by the defendant after October 17, 1899, were so taken at the expense of the county upon certificates held by the defendant, which accordingly had cost the defendant less than seventy-five cents on the dollar.

(5) No notice was given for the sale of such certificates less than for face value, as required by sec. 664, Stats. 1898.

(6) The notice was not given in accordance with the resolution, nor with sec. 664, Stats. 1898.

(7) The county held 4,000 or 5,000 acres of tax lands and a large amount of tax certificates so agreed to be purchased, but not included in the quitclaim deed, nor paid for by the defendant.

(8) None of the certificates so purchased by the defendant were ever indorsed on the back by the county treasurer, but only by the county clerk, contrary to the resolution of the board.

(9) The resolution of the board of October 16, 1899, accepting the balance tendered by the defendant as of October 2, 1899, was made on the express consideration that the defendant waived payment to him of the redemption moneys paid on such certificates between May 23, 1899, and July 6, 1899.

(10) During such negotiations and sale the county clerk was the authorized and acting agent of the defendant in disposing of such lands and certificates for a sum largely in excess of the amount paid, and the moneys received by the clerk on such sales were applied as so much paid to the county by the defendant, and the county clerk received ten per cent. commissions for the moneys received by him on such sales.

(11) The defendant paid the taxes on said lands for 1900 and 1901, and interest to July 9, 1902, and costs and fees, amounting to $162, but never paid the county the amount for which the lands were sold for those years, respectively.

And as conclusions of law the court found that the plaintiff is the owner of and has an estate in fee simple in and to all the lands described, and is entitled to the immediate possession thereof, and that the defendant unlawfully withholds possession of the same from the plaintiff, to his damage in the sum of six cents; that the defendant has no interest in the lands, except as stated; that each of the five tax deeds are null and void for irregularities not going to the groundwork of the tax; that the defendant holds no right, title, or interest in or to the lands under said tax deeds; that the sale of the lands and tax certificates from Price county to the defendant, covering the lands in question, is null and void, and the defendant has no right, title, or interest of any kind or nature in or to said lands under the same, nor to the tax certificates on

which such five tax deeds were issued; that the defendant should take nothing under its counterclaim, and the plaintiff should recover in this action.

Thereupon the court ordered that the taxes paid upon the lands by the defendant for the years 1900 and 1901, with interest thereon at fifteen per cent. per annum from the time they were so paid to the date of the findings, be set off against the damages awarded to the plaintiff, and that the plaintiff, as a condition of the judgment, shall pay any excess over such damages, with interest from the date of the findings, within ninety days, and that in default thereof the defendant shall have judgment in this action in compliance with such order, and in accordance with the findings of fact and the conclusions of law.

Thereupon, and after the making and filing of such findings of fact and conclusions of law, and the entry of such order, October 29, 1902, and on November 19, 1902, the plaintiff notified the defendant in writing to the effect that he thereby offered to pay to the defendant, on its request, the amount for which the lands in question were sold for the taxes for the years 1895, 1896, 1897, 1898, and 1899, and the costs of executing and recording the tax deeds taken on such sales, with interest on all such sums at the rate of fifteen per cent. from the date of sale until the date of the findings herein, together with full legal interest up to the date of such acceptance—such payment, however, to be made only on condition that the defendant would not appeal to the supreme court from the judgment to be entered therein; the offer being made for the purpose of avoiding the costs and expenses of an appeal, and for that purpose the plaintiff thereby waived the question as to the amount to be thus allowed to the defendant. November 26, 1902, the defendant declined to accept such offer. Thereupon, and on December 6, 1902, judgment was entered reciting that the plaintiff had complied with such order and paid such excess into court,

and which judgment was in all respects in accordance with such findings and order, and that the plaintiff recover from the defendant the six cents damages found, and $178.66 costs and disbursements as taxed. From that judgment the defendant brings this appeal.

For the appellant there was a brief by *T. C. Ryan* and *T. H. Ryan,* attorneys, and *L. M. Sturdevant,* of counsel, and oral argument by *Mr. Rublee A. Cole* and *Mr. Sturdevant.*

For the respondent there was a brief by *H. C. Peters* and *K. K. Kennan,* attorneys, and *Barry & Barry,* of counsel, and oral argument by *Mr. Kennan* and *Mr. M. Barry.*

CASSODAY, C. J. The court found, and it is conceded by the defendant, that the plaintiff is the owner of all the lands in question, and is entitled to the possession thereof, unless he has been divested by one or more of the five tax deeds under which the defendant claims title. Of course, a tax deed in regular form is "presumptive evidence of the regularity of all the proceedings, from the valuation of the land by the assessor up to and including the execution of the deed." Sec. 1176, Stats. 1898. Nevertheless, until the statute of limitation has run in favor of such deed, such presumption may be overcome by proof of defects which will invalidate the tax deed. The plaintiff contends that there are numerous defects, disclosed in the record, any one of which should have such an effect. Several of these questions are important, and should only be determined by this court after very careful consideration. The view we have taken of this case only requires that we should here determine two of these questions; and they are, in effect, covered by the recent decision of this court in *Chippewa River L. Co. v. J. L. Gates L. Co., ante,* p. 345, 94 N. W. 37, 95 N. W. 954, as modified by the opinion filed on the motion for a reargument in the case.

It is claimed on the part of the plaintiff that, at each of
the tax sales under which the five tax deeds in question were
respectively taken, the lands were sold for a sum consider-
ably in excess of the unpaid "taxes, interest and charges
thereon," as prescribed by the statute.    Sec. 1130, Stats.
1898.    The tax certificates upon which such tax deeds were
issued are all in the record.    The evidence shows the sev-
eral amounts of taxes returned by the town treasurer as de-
linquent on the lands therein described for each of the five
years in question, and also the amounts for which such lands
were sold.    From such evidence it appears, in effect, and
is undisputed, that each of such sales was for an amount
equal to the aggregate amount of the delinquent return,
with the interest allowable thereon to the day of sale, and
twenty-five cents "fee for advertising" and twenty-five cents
for the certificate of sale, and for an additional amount
equal to five per cent. of the amount of the return.    To
illustrate: A certificate on the sale of May 21, 1895, is for
$3.42, whereas the delinquent return is only $2.66—mak-
ing a difference of seventy-six cents; and that includes the
two items of twenty-five cents each mentioned, and the in-
terest on the return to the day of sale, and the five per cent.
on the amount of the return, additional.    The certificate on
the sale of May 19, 1896, is for $3.57, whereas the delin-
quent return is only $2.80.    So the certificate on the sale of
May 18, 1897, is for $3.29, and the delinquent return only
$2.54.    The certificate on the sale of May 17, 1898, is for
$3.66, and the delinquent return only $2.88.    The certifi-
cate on the sale of May 16, 1899, is for $3.99, and the de-
linquent return only $3.18.

So far as the allowance of twenty-five cents for the cer-
tificate is concerned, that is determined in favor of the de-
fendant in the *Chippewa River Land Co. Case, supra.*    On
the other hand, it was there determined, upon facts quite

similar to the facts in the case at bar, that the twenty-five
cents, "fee for advertising," was improperly included. In
that case, as in this, there were five publications of each no-
tice of sale; but the last publication in each case was less
than a week prior to the sale, and hence could not be re-
garded as a legal publication within the meaning of the stat-
ute. Sec. 1130, Stats. 1898. Here the fifth publication
was in no instance more than five days prior to the sale.
Rejecting the fifth publication, therefore, as "mere surplus-
age," and regarding the fourth publication as the last pub-
lication, as held in the *Chippewa River Land Co. Case,* and
the question recurs whether the "fee for advertising" was
included in the amount for which the lands were sold, con-
trary to the statute. Sec. 1132, Stats. 1898. That statute
provides:

"Every printer who shall publish such statement and no-
tice shall, immediately after the last publication thereof,
transmit to the treasurer of the proper county an affidavit
of such publication made by some person to whom the fact
of publication shall be known; and no printer shall be paid
for publishing any such statement and notice who shall fail
so to transmit such affidavit within six days after the last
publication thereof."

Here it appears, and is undisputed, that "such statement
and notice," and the affidavit of the publication thereof,
were not transmitted to the treasurer of the county "within
six days after the last publication thereof," within the
meaning of that section. As stated in the case cited, the
words "last publication" must "be taken in their natural
and ordinary sense, as referring to the last issue of the
paper in which the statement and notice were legally pub-
lished, and not the completed period of publication." As
there indicated, the purpose of the strict requirement of the
statute quoted is undoubtedly to make it sure that the proof
of proper publication shall be in the hands of the treasurer

before the sale takes place. The publication must be for four successive weeks prior to the day of sale prescribed in the statute. Sec. 1130, Stats. 1898. As stated by my Brother Winslow in the case cited:

"The full period of twenty-eight days from the date of the first publication must expire before the day of sale, and that period may expire on the day before the sale, but generally expires less than six days preceding the day of sale. Thus, if the affidavit were not required to be transmitted until six days after the completed period of twenty-eight days, it would frequently fail to be in the hands of the treasurer before the sale, and the treasurer could not transmit it to the clerk, with the statement of the sale and the other papers, immediately after the sale, as he is required to do by sec. 1141."

For the reason stated, we must hold that the printer's fee of twenty-five cents was improperly included in the amount for which each sale was made. See *Ward v. Walters,* 63 Wis. 39, 44, 22 N. W. 844; *Pittelkow v. Milwaukee,* 94 Wis. 655, 69 N. W. 803.

In addition to the unpaid taxes returned, with interest thereon to the day of sale, the printer's fee of twenty-five cents, and the certificate fee of twenty-five cents, there was included in each sale an additional amount, equal to five per cent. of the amount of the delinquent return. No attempt is made to justify the inclusion of such additional amount. It was held by this court at an early day that, "where lands were sold at a tax sale for *an illegal excess* of five per cent. above the amount of taxes and charges for which they were liable to be sold, the sale was *void.*" *Kimball v. Ballard,* 19 Wis. 601; *Warner v. Outagamie Co.* 19 Wis. 611; *Pierce v. Schutt,* 20 Wis. 423. Thus it appears that the tax sale of 1895, upon which the tax certificate of that year mentioned was issued, was for an illegal excess of thirty-eight cents. Each and all of the other tax sales were for a corresponding illegal excess. It follows that each of

the five tax deeds based upon such sales, respectively, is void.

2. But it is contended on the part of the defendant that, notwithstanding the fact that such deeds are all void, still the judgment should be reversed, because it fails to conform to the statute. Sec. 3087, Stats. 1898. There is no pretense that any of the lands claimed by the plaintiff "were not liable to taxation for the tax for which they were sold, or that such tax was paid prior to the sale, or the land was redeemed from such sale;" and hence the case comes squarely within the provisions of that section, which declares:

"The court shall order that the amount for which such land was sold, and the costs of executing and recording such tax deed, and the amount paid by the defendant for taxes assessed upon such premises subsequent to said sale, with interest on all such sums at the rate of fifteen per centum per annum from the time so paid until the date of the verdict, shall be set off against the damages awarded to the plaintiff by the verdict; and if there be any excess, that the plaintiff, as a condition of judgment, shall pay the same, with interest from the date of the verdict, within ninety days; and that, in default thereof, the defendant shall have judgment in the action."

On the part of the plaintiff it seems to be claimed that he is entitled to recover the lands, without complying with the conditions thus imposed by the statute, by reason of the alleged illegal sale of lands and tax certificates from the county to the defendant in 1899, set forth in the foregoing statement of facts.

This is an action of ejectment. The statute expressly declares:

"Every judgment rendered in any such action shall be conclusive as to the title established therein upon the party against whom it is rendered and upon all persons claiming from, through or under him by title accruing after the filing of a notice of the pendency of the action in the office of

the proper register of deeds, subject to the exceptions here-inafter contained." Sec. 3088, Stats. 1898. See, also, sec. 3074, Stats. 1898.

Whatever view may be taken of such sale of lands and tax certificates by the county to the defendant, yet it could not operate to relieve the plaintiff from the payment of what was justly and equitably due for the taxes, interest, and charges on the lands for the several years mentioned. The fact, if it be a fact, that the transaction was illegal, did not relieve the plaintiff from paying the amount imposed by statute as a condition of his recovery in ejectment. His right to recover at all is based upon the illegality of the proceedings upon which the several tax deeds were based. The manifest purpose of the statutes cited is to have the judgment in ejectment conclude all further controversy as to any claim by the defendant or any one claiming under it on account of any such taxes. *Cook v. McComb,* 98 Wis. 526, 530, 74 N. W. 353; *Bell v. Peterson,* 105 Wis. 607, 611, 612, 81 N. W. 279.

The trial court was clearly wrong in limiting the amount to be paid by the plaintiff, as a condition of judgment being entered in behalf of the plaintiff, to the taxes of 1900 and 1901. Counsel for the plaintiff apparently attempted to cure such error by offering to pay the defendant, on its request, the amount of the taxes for the five years mentioned, respectively, and the costs of executing and recording the several tax deeds, with interest on all such sums at the rate of fifteen per cent. from the date of sale, but only on condition that the defendant would not appeal to this court from the judgment to be entered therein. The offer, being conditional, and not being accepted, was, of course, ineffectual. What is said upon this question in the last opinion filed in the *Chippewa River Land Co. Case* cited is applicable here. We must hold that the judgment is erroneous for failure to impose upon the

plaintiff the conditions prescribed in the statutes in the particulars mentioned.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion and as prescribed in the statutes.