ANDERSON, Appellant, vs. KENDRIGAN and wife, Respondents.

*December 2, 1941—January 13, 1942.*

*Walter T. Norlin* of Washburn, for the appellant.

For the respondents there was a brief by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *A. T. Pray.*

WICKHEM, J.    There are no issues of fact in this case. Plaintiff seeks to quiet title to lot 1, in block 75, city of Bayfield, which he holds under a tax deed, and also a quitclaim deed from Bayfield county.    Defendants attack the validity of the tax sale of 1933 upon which the tax deed is based, the grounds being defective proof of posting notices of sale and exaction of publication fees in excess of the amount prescribed by law.    The lower court held the sale invalid upon the latter ground and that is the only question argued upon this appeal.

In 1933, prior to changes made by the legislative session of that year, sec. 74.33 (1), Stats. 1931, required the county treasurer to make up a delinquent list of real estate in the county on the fourth Monday in April with notice of a sale to take place on the second Tuesday in June, and for the publication and posting of notice thereof for four consecutive weeks prior to the date of sale.    Sec. 74.37 (1) at this time provided for a printer's fee for publication of twenty-five cents per description on the first thousand and fifteen cents per description upon amounts over one thousand.    Sec. 74.34 provided for the taking of bids at least five days before publication contracts were to be let and for the letting of contracts to the lowest bidder if over four thousand descriptions were to be published.    On April 15, 1933, the legislature enacted ch. 81, Laws of 1933, "to extend the date of tax sales in 1933." This enactment postponed the date upon which the treasurer was to make up the delinquent list from the fourth Monday in April to the fourth Monday in June of 1933 and the date of sale from the second Tuesday in June to the first Tuesday in August.    It provided for publication for four weeks prior to the first Monday in August instead of for four weeks prior

to the fourth Monday in June. On June 23, 1933, ch. 306, Laws of 1933, amending secs. 74.33 (1), 74.37 (1), 75.07 (1), 75.10, and 75.11 (1) went into effect. Ch. 306 requires the county treasurer, on the fourth Monday of April in each year, to make up a delinquent list and notice of sale on the second Tuesday in June thereafter and to cause this statement to be published in a newspaper printed in the county once each week for two successive weeks prior to the date of sale. It further provided that the publisher of this list "shall receive for all insertions not to exceed *twenty* cents for each tract or lot of land in such list not exceeding one thousand and *ten* cents for each tract or lot of land in such list in excess of one thousand, except that when the same is published under contract, as provided in section 74.34, he shall receive the compensation fixed by such contract and no more." Sec. 74.37 (1). The amount paid for publication "shall in all cases be apportioned equally upon the several parcels of land advertised." At least six and not more than ten months before expiration of the time limited for redeeming lands sold the county treasurer is required to publish once a week for two successive weeks in a newspaper printed in the county a list of all unredeemed lands. Sec. 74.34, referred to in ch. 306, and heretofore summarized, was not changed by the new enactment. Sec. 74.34 provides that the contract price shall "in no case exceed the amount now or which shall be hereafter prescribed by law as the maximum price for publishing such list." Ch. 306 contains the usual specification that its provisions shall take effect upon passage and publication.

On June 26th the county treasurer made out his tax list and notice. On June 13, 1933, the treasurer had accepted the bid of the Bayfield Press and published the notice for fifteen cents per description which is four and two-tenths cents more than the maximum publication fee possible under sec. 74.37 (1), Stats., as amended. Thus, if ch. 306 applies to the sale of 1933, the sale was invalid by reason of the inclusion of an

illegal charge in amount for publication fees. This was conceded by counsel and assumed by the trial court. See *Milledge v. Coleman,* 47 Wis. 184, 2 N. W. 77; *Barden v. Supervisors of Columbia County,* 33 Wis. 445; *Chippewa River Land Co. v. J. L. Gates Land Co.* 118 Wis. 345, 94 N. W. 37, 95 N. W. 954; *Pinkerton v. J. L. Gates Land Co.* 118 Wis. 514, 95 N. W. 1089; *Kimball v. Ballard,* 19 Wis. *601; *Warner v. Board of Supervisors of Outagamie County,* 19 Wis. *611; *Pierce v. Schutt,* 20 Wis. *423.

The question, therefore, is whether ch. 306 was intended to affect the tax sale of 1933. While it provides without any qualification that it is to take effect upon publication, plain-tiff contends that it contains interior evidence of legislative intent not to affect the 1933 tax sale. It was enacted too late for most of its provisions to affect the 1933 sale. For example, it provides that the list of delinquent land shall be made on the fourth Monday in April and the sale on the second Tuesday in June. Both of these dates had passed for 1933 when the law was enacted. It is framed in general terms and in view of the fact that the same session passed chs. 81 and 350 completely taking care of the 1933 sales, plaintiff urges that ch. 306 was not intended to apply to these sales.

It is conceded by the circuit judge that the only provisions that can apply to 1933 sales are those relating to the number of publications and compensation therefor.

At this point, attention should be directed at ch. 350, Laws of 1933, the second of two enactments dealing specifically with 1933 tax sales. Ch. 350 was enacted on June 30th, and published on July 1st. It amended ch. 81, heretofore referred to as extending the tax sale of 1933, by providing that the statement and notice to be made up by the treasurer on the fourth Monday in June shall be published once in each week for "at least two successive weeks prior to said first Tuesday in August," thus cutting down the required number of publications from four to two, but providing, however, that "in

the event that bids have been called for, or that contracts have been entered into, for such publication for a period of four successive weeks and there is not sufficient time for such four publications prior to said first Tuesday in August the county treasurer, in his discretion, may modify said contract and publish such statement and notice for a period of at least two successive weeks prior to said first Tuesday in August."

Plaintiff's contentions must be sustained. The legislative pattern is clear. The 1933 tax sales were completely taken care of by chs. 81 and 350, Laws of 1933, which specifically deal with the sales of that year. Ch. 350 was enacted to take care of the fact that it was frequently, if not generally, impossible or impracticable for a treasurer to prepare the list and notice on the fourth Monday in June and get it published once a week for four weeks prior to the first Monday in August. For this reason the minimum number of publications was changed to two.

Ch. 306, on the other hand, was a general law, a complete scheme, much of which it was too late to enforce in 1933. It is not to be supposed that having specifically dealt with the 1933 sales in that very session, the legislature meant to undo any part of this by a largely inapplicable general act. In this connection it is to be noted that ch. 350 was enacted after ch. 306 and the doctrine of implied repeal is certainly not applicable. Ch. 81 would not have been amended if its provisions had been intended by the legislature to be supplanted by ch. 306.

The date of taking effect is neither conclusive nor persuasive. To be sure, the act takes effect as of the date of its publication, but the act prescribes a general scheme and was not intended to be applied piecemeal.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.