Lawton vs. Waite and others.

LAWTON, Respondent, vs. WAITE and others, imp., Appellants.

*April 25 — May 16, 1899.*

*Contracts: Subcontractors: Sureties: Privity: Pleading: Construction: Negligence: Co-employees: Personal injuries: Notice: Statutes of limitation: Amendment and repeal of statutes: Constitutional law: Variance between title and subject matter.*

1. A contractor agreed with the United States to carry the mails on a given route, and, among other provisions, that he would be answerable to the United States, or any person aggrieved, for performance

Lawton vs. Waite and others.

of all the duties and obligations assumed in and by his contract. A subcontractor and his bondsmen only agreed to carry the mails, and that for any failure therein they should become liable to the *original contractor* for certain liquidated damages, but they did not assume any liability to any one except the other party to the subcontract, nor any duty save to him and to the United States. In an action against both contractors and their bondsmen, the subcontractor and his bondsmen only being served, the complaint alleged that plaintiff, in the discharge of his duties as railway postal clerk and pursuant to a provision of the original contract, occupied a seat in the subcontractor's wagon in going from the railway station to the postoffice over such route, and on that day, to the knowledge of the subcontractor, there was used a vicious, kicking, runaway, unsuitable, and dangerous horse, a wagon and harness out of repair, and in charge of a driver incompetent, unsafe, and unsuitable; that during the trip, by reason of such defects, the horse attached to the wagon became unmanageable and ran away, and thereby plaintiff was injured, while exercising due care and diligence and without negligence on his part. *Held*, on demurrer of the bondsmen, that demurrants' duty and liability to plaintiff must be found, if at all, in the subcontract which they signed, and that the complaint failed to set forth any right of action upon the contract made by them.

2. The demand in such case could not be maintained against the principal and his sureties jointly unless the principal had breached some requirement of the contract, performance of which the sureties had guaranteed.

3. The fact that certain terms of the original contract were printed on the back of the subcontract does not show that they were all assumed by the subcontractor but only to the extent specified over his signature, and only so far as they regulate his undertaking to carry the mails, and hence there was no privity of contract between the demurrants and plaintiff.

4. By reason of the fact that the plaintiff was a lawful passenger on the subcontractor's wagon, driven by his servant while in the scope of his employment, there existed on the subcontractor's part the duty of ordinary care, and liability for any injury of which his or his servant's negligence might be the proximate cause.

5. The complaint in such action being liberally construed, with a view to substantial justice between the parties, the setting forth the two contracts will be construed as alleging the ultimate fact that plaintiff was lawfully and rightfully a passenger in the wagon, and thus construed, with the other allegations, contains all the elements.

Lawton vs. Waite and others.

essential to set forth a cause of action in tort for damages from the negligence of the subcontractor, independently of the consideration whether he had contracted with defendant for any particular line of conduct.

6. The rule as to exemption of an employer from liability for the negligence of co-employees applies only to protect the employer, and when it is said that an employee assumes the risk from the negligence of his co-employee, it means only that he assumes it as against his employer, not as against his co-employee.

7. If one by his negligence injures another, it is no defense, in a suit against him, to assert that they were both employed under one master.

8. Ch. 304, Laws of 1897 (providing that no action to recover for injuries to the person shall be maintained unless notice be served upon the defendant within one year after the happening of the event causing the injury), being in effect a statute limiting the time of bringing actions, it was within the power of the legislature to change or repeal its provisions, with respect to existing causes of action, before the right of action thereon was wholly barred and destroyed.

9. Thus, where a cause of action accrued before the passage of said ch. 304, and was not barred thereunder at the time of the enactment of ch. 380, Laws of 1897 (providing that the provisions of ch. 304 with respect to notice should not apply to causes of action which accrued prior to the enactment of said ch. 304), failure to give said notice would not defeat a recovery.

10. The fact that a public and general act of the legislature contains matter foreign to its title does not render such matter invalid, there being no direct provision to that effect in the constitution.

APPEALS from orders of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed on one appeal; reversed on the other.*

Appeals from orders overruling demurrers to a complaint, which alleges that the defendants E. A. Chilton, as principal, and J. E. Chilton and R. S. Carr, as sureties, entered into a contract with the United States, whereby it is agreed that they will carry the mails from the stations to the post office in the city of Milwaukee from July 1, 1895, to June 30, 1899, in a safe and secure manner, free from wet or other

injury, in wagons of a style and design to be prescribed by the Postmaster General, and, by the fourth clause, will be accountable and answerable in damages to the United States or any person aggrieved for faithful performance by the said contractor of all duties and obligations herein assumed, or which are now or may hereafter be imposed by law in this behalf; and, further, to be so answerable and accountable in damages for the careful and faithful conduct of the person or persons who may be employed by said contractor, and to whom the said contractor shall commit the care and transportation of the mails, and the faithful performance of the duties which are or may by law be imposed upon such person or persons in the care and transportation of said mails. The same paragraph also prohibits the employment of subordinates under sixteen years of age, of bad morals, or who have not taken the oath required by law. The fifth paragraph requires contractor to discharge any driver or other employee when required by the Postmaster General, and also prohibits the carriage of parcels except as contained in the mail; and the ninth: "To convey, whenever requested so to do, one railway post-office clerk, a substitute, or a messenger, on the driver's seat of each wagon." A series of general stipulations and agreements follow, providing for changes in service, and that for any failure in certain details of carrying of the mails, " or for any other delinquency or omission of duty under this contract," the contractor shall forfeit, and there may be withheld from his pay, such sum as the Postmaster General may impose as fines or deductions; and further providing for annulment in case of repeated breaches or violations of the postal laws, and that such annulment shall not impair the right of the United States to claim damages under the contract, but such damages may, for the purpose of setoff or counterclaim, be assessed and liquidated by the auditor of the treasury for the post-office department, and that the contract is to be subject to all the conditions imposed by law

Lawton vs. Waite and others.

and the several acts of Congress relating to post offices and post roads,— for which the government was to pay Chilton $6,666 per year.

On February 23, 1895, the defendant *Robert A. Waite*, as subcontractor, and defendants *Alexander McWhorter* and *J. A. Waite*, of Waukesha, as sureties, entered into a written agreement with E. A. Chilton, wherein said *Waite*, together with his sureties, undertook and bound themselves "to transport the United States mail on said route from July 1, 1895, to June 30, 1899, at such times and upon such schedules as the Postmaster General may direct, and in full compliance with the postal·laws and regulations, and subject to, and in compliance with, all of the requirements of said party of the first part under said contract with the United States, for $4,800 per annum." It was agreed that liability for all fines and deductions imposed by the Postmaster General should be assumed by the subcontractor, and that, in case of any failure or refusal by the party of the second part to perform the mail service therein provided for, then the sum stipulated should become immediately due and payable to the party of the first part as liquidated damages. Upon the back of this subcontract were printed numerous provisions, described as the principal requirements of the contract between the United States and the principal contractor, to which contract such subcontract .was subject. Those specifications reiterated many of the requirements as to the manner of carrying the mail; kind of wagons to be used; taking of oath by every employee; carriage of one railway postal clerk, a substitute, or messenger, on the driver's seat; that employees shall be over sixteen years of age, of good moral character, and able to read and write, and must take oath and wear regulation cap; and that the principal contractor agrees "to be accountable in damages to the United States, or any person aggrieved, for any failure to faithfully perform the obligations assumed by the

contractor, or imposed by law on him or the persons employed by him, *in the care, transportation, or custody of the mails.*"

The complaint then goes on to allege that the plaintiff was a railway postal clerk, required by his duty to ride from the Chicago & Northwestern Railway station, in Milwaukee, to the post office with the mails, in defendants' wagon, and was so riding on April 1, 1897; that on said day the defendants failed to use in said service a first-class horse, but knowingly used, attached to said wagon, a vicious, kicking, runaway horse, unsuitable and dangerous; that they failed to have or keep wagon, horse, and harness in good order and appearance, so as to perform the service safely or without injury to the plaintiff, but, on the contrary, that the wagon was out of repair, furnished with no brake, the horse was vicious, kicking, and a runaway, and unsuitable, the harness was not in good order, but old, weak, and out of repair, too large for the horse, and the holdback straps were not of sufficient strength to be used on said wagon to keep it from running on the horse, and were broken, and that the defendants failed to furnish a proper, safe, or competent driver for the service aforesaid, but, on the contrary, furnished a driver who was a cripple, and wholly incompetent, unsafe, and unsuitable for the service,— all to the knowledge of the defendants; that on the way to the post office, coming to a descent in the street, the wagon, by reason of the aforesaid defects in, and unsuitableness of, said harness and wagon, and incompetency and unsuitableness of the driver, commenced to run against the horse, which commenced to kick, whereupon the driver, by reason of his incompetency and unsuitableness, was unable to hold the horse, and carelessly and negligently dropped the reins, so that the horse was free to and did run away, and collided with an express wagon, tipping over the mail wagon, and injuring the plaintiff, who was in the exercise of due and proper care and diligence, and guilty of no neg-

ligence contributing to the injury. The complaint concludes with the allegation that said injuries were caused solely by reason of the defendants' failure to perform and discharge the duties and obligations which they had assumed under and by virtue of said contracts. The original contractor and sureties were not served. *Robert A. Waite,* the subcontractor, by himself, and his two sureties together, served separate general demurrers, which were overruled, from which orders separate appeals were taken.

*D. S. Tullar* and *H. C. Waite,* for the appellants.

For the respondent there was a brief by *Bird, Rogers & Bird,* and oral argument by *Geo. W. Bird.*

DODGE, J. 1. The complaint is very long, and somewhat ambiguous, as to whether it is founded on contract or tort. While many acts which might constitute negligence are alleged, they are not characterized expressly as either wrongful or negligent, and they are all asserted to constitute breaches of one or the other of the two contracts, which are not set out *in extenso.* Again, the sureties are joined as defendants, and judgment demanded against them jointly with their principal. Such demand can, of course, be supported only on the ground that their principal has breached some requirement of the contract, performance of which the sureties have guaranteed. They have no other connection either with the plaintiff or with the acts and events out of which his claim arises. Their liability must arise, if at all, from the strict words of the written contract which they have signed. Considering, then, first, whether a cause of action *ex contractu* is set forth against these demurring defendants, it must be observed that many of the contractual undertakings alleged in the complaint have no application to them, but only to the other defendants, who executed the original contract with the United States. The demurrants' duty and liability must be found in the subcontract, which it will be

noted is much narrower than the original. Its undertaking is at a considerably less price, and to perform only a part of the duties assumed by the original contractor. He agreed to carry the mails; to account for and pay over any moneys of the United States coming into his possession; to carry post-office blanks, mail bags, and all other postal supplies; to convey on driver's seat of each wagon a postal employee; that his contract might be extended additional six months, in discretion of Postmaster General; and that he would be answerable to the United States or any person aggrieved for performance of *all the duties and obligations therein assumed.* The subcontractor only agreed to carry the mails, and that for failure therein he should be liable *to the original contractor* for certain liquidated damages.

Nowhere in this subcontract is there assumption of any liability to any one except the other party, nor any duty save to him and to the United States. If the original contractor assumed liability for damages to others than the United States, he has not by the subcontract required the subcontractor to do so. He has adopted another method of securing indemnity to himself for any liability that may fall on him by reason of failure of the subcontractor. The plaintiff urges that, because certain of the terms of the original contract are notified to the subcontractor by printing them on the back of his contract, the latter is deemed to have assumed them. This position is not tenable. They are not printed as a part of the subcontract, but merely as information of the terms of the original, and they are assumed by the subcontractor only to the extent specified over his signature, and that is only so far as they regulate his undertaking to carry the mails. Indeed, the very notification with reference to Chilton's liability to persons aggrieved limits it to damages for failure in the care, transportation, or custody of the mails. We think it plain, therefore, that no privity of contract between the demurrants and the plaint-

iff is shown.   They contracted alone with E. A. Chilton, and not with the plaintiff, nor even with the United States, and only contracted for transportation of the mails, in which contract the government primarily, and individuals only indirectly, have any interest.

The situation is closely analogous to that presented in *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48, where the defendant failed in its duty by contract with the city to furnish water for extinguishment of fires, whereby great loss fell on plaintiff.   In that case it was held that no privity of contract existed, notwithstanding the fact that plaintiff might be greatly benefited by its performance or injured by breach, but that to recover he must point to a *duty resting on defendant by law*, breach of which would constitute a tort.

Most of the authorities cited by respondent to support recovery, under similar circumstances, repudiate the *contract* liability, or rest on a duty imposed by law as a result of the situation.   *Sawyer v. Corse*, 17 Grat. 230; *Hale v. G. T. R. Co.* 1 L. R. A. 187, 60 Vt. 605; *Collett v. L. & N. W. R. Co.* 16 Q. B. 984; *Mellor v. M. P. R. Co.* 105 Mo. 455; *Hutchins v. Brackett*, 22 N. H. 252; *Seybolt v. N. Y., L. E. & W. R. Co.* 95 N. Y. 562.

We conclude, therefore, that the complaint fails to set forth any right of action in the plaintiff upon the contract made by the demurring defendants.   As no other connection of the sureties, *Alexander McWhorter* and *J. A. Waite*, existed, their demurrer should have been sustained.

2. As to the subcontractor, *Robert A. Waite*, however, a different question arises.   By reason of the fact that the plaintiff was a lawful passenger upon the vehicle owned by such defendant, and driven by his servant within the scope of the latter's employment, there existed a duty, not needing to be based upon any contract, but which the law imposes upon every person when another is lawfully in a position to be affected by his acts or conduct.   He owed to the plaint-

Lawton vs. Waite and others.

iff the duty of ordinary care, and was liable for any injury of which his negligence might be the proximate cause. The case of *Collett v. L. & N. W. R. Co.* 16 Q. B. 984, is extremely analogous to this. There the injury was to a postal employee whom the defendant, as a carrier of mails, was obliged to carry, and liability to him for an injury resulting from negligence was contested on the ground that there was no privity of contract with him. The court held the contrary, and repudiated the idea that only the Postmaster General, with whom the contract was made, could bring the suit as for breach of it, saying: "Lord CAMPBELL, C. J. The allegation that it was the duty of the company to use due and proper care and skill in conveying is admitted [by demurrer]. That duty does not arise in respect to any contract between the company and the persons conveyed by them, but is one which the law imposes." "PATTESON, J. The plaintiff's right to sue arises, not from any particular contract with the defendants, but from their general duty to carry the mails and officers. Such injury is properly the subject of an action on the case by the plaintiff."

In *Sawyer v. Corse, supra*, plaintiff sued a mail contractor for loss of a letter through negligence of the defendant's employee carrying mail bags, the contract being set out somewhat as in the present case. The court held that it was an action on the case; that it could only be sustained by proof: first, of defendant's own negligence in carrying the letter; second, his negligence in employing a known incompetent person; or, third, negligence of his agent in the scope of his employment.

In *Seybolt v. N. Y., L. E. & W. R. Co.* 95 N. Y. 562, a railway postal employee, traveling on defendant's road in care of the mails in pursuance of the usual statute, was held entitled to recover in tort for an injury from negligence. The court held that the action did not depend on the contract relation; further than that established the lawfulness

of his presence on the train; whereupon the common-law duties of the defendant to him as to any other passenger arose.

In *Brewer v. N. Y., L. E. & W. R. Co.* 124 N. Y. 59, plaintiff's intestate was being carried by the defendant as an express messenger under a contract with the express company whereby the express company assumed all responsibility for risks of transportation. The defendant was held liable, the court saying: "The negligence of the defendant was the violation of its duty. It was the want of the care to which the plaintiff's intestate was entitled for his protection. This duty and such right did not depend or rest upon the contract, but upon the relation as carrier of the plaintiff, and the care that the defendant, as such, was required to exercise. It is violated duty that furnishes ground for an action of negligence."

To the same view may be cited *H. & T. C. R. Co. v. Hampton,* 64 Tex. 427; *Mellor v. M. P. R. Co.* 105 Mo. 455; *Robinson v. Rohr,* 73 Wis. 436; *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48.

The rule of liability for negligence resulting in injury to another lawfully in a situation to be dependent on the defendant's conduct is, however, too elementary to need extended citation of authority.

Upon a careful examination of the complaint, in the light of the command of sec. 2668, R. S. 1878, that the allegations of a pleading shall be liberally construed with a view to substantial justice between the parties, we may read all of the extended narrative with reference to these two contracts as but alleging the ultimate fact that plaintiff was lawfully and rightfully a passenger on defendant's wagon, although something more than thirty printed pages are used to accomplish such allegation. *Nelson v. Harrington,* 72 Wis. 591, 597. The complaint, then, alleges a series of acts of the defendant and his employee which undoubtedly constitute negligence,

although no such conclusion is stated: the knowingly sup-
plying a vicious, kicking, and runaway horse, unsuitable for
the service, defective harness and wagon, and incompetent
driver, are alleged; also that the vice of the horse, the de-
fects of the vehicle and harness, and the incompetence and
negligence of the driver, caused the plaintiff's injury, with-
out fault or negligence on his part. Thus construed, the
complaint contains all the essential elements to set forth a
cause of action in tort for damages to the plaintiff from the
negligence of the defendant *Robert A. Waite*, independently
of the consideration whether he had contracted with the
plaintiff for any particular line of conduct.

3. It is contended on behalf of the appellants that no lia-
bility can exist, for the reason that the plaintiff, the defend-
ant *Robert A. Waite*, subcontractor, and his employee, the
driver of the wagon, were all co-employees of the United
States, and therefore liability cannot exist. This position
involves a strange confusion of ideas as to the doctrine of
nonliability for negligence of co-employees. That doctrine
applies only to protect the employer, and exempt him, under
certain circumstances, from liability for injuries resulting to
one employee from the negligence of another. When it is
said that an employee assumes the risk from the negligence
of his co-employee, it means only that he assumes it *quo ad*
his employer, but not as against his co-employee. If one
by his negligence injures another, it is no defense, in a suit
against him, to assert that they are both employed under
one master, but such is the substance of the contention here.
The suit is not against the United States, but by the plaint-
iff, an employee thereof, against the defendant, who, accord-
ing to this contention, is another employee. Nor can any
such relation be urged to exempt defendant *Waite* from lia-
bility to plaintiff for negligence of the former's servant, for
the plaintiff was not an employee of the defendant.

4. It is further objected to the maintenance of this action

that ch. 304, Laws of 1897, prohibits it, for the reason that no notice was served upon the defendants, as therein required. That statute was an amendment to sec. 4222, R. S. 1878, prescribing the limitation of time for bringing various actions, and added thereto the provision that no action to recover damages for an injury to the person shall be maintained unless, within one year after the happening of the event causing such damages, notice in writing, etc., shall be served upon the person or corporation by whom it is claimed such damage is caused. That act was approved April 23d, and took effect, by publication, April 28, 1897. It was followed by ch. 380, enacted August 20, 1897, at the special session of the same legislature, being entitled " An act to provide for the immediate taking effect of certain sections of the Statutes of 1898 as reported by the revisers and the joint committee on revision, and to amend chapter 288, Laws of 1897, relating to the establishment of garbage reducing works," etc. The latter act comprehended a large number of the new provisions included in the revision enacted at the same session, amongst others sec. 4222, as amended by ch. 304, Laws of 1897, to which, however, the following proviso was added: " Provided, that the provision herein requiring notice of one year shall not apply to any event causing damage which happened before the 28th day of April, 1897, nor shall that part of section 5 of chapter 304 of the Laws of 1897 relating to such notice apply to any such. event." The appellants contend that this later legislation was ineffective, and that the requirements of ch. 304, Laws of 1897, are still in force, and have not been complied with.

This legislation has very recently received consideration in *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301. It was there substantially held that ch. 304, Laws of 1897, was one limiting the time of bringing actions. It is therefore subject to the power of the legislature to change or repeal stat-

Lawton vs. Waite and others.

utes of limitation with respect to existing causes of action before the right of action is wholly barred and destroyed. *Oberreich v. Fond du Lac Co.* 63 Wis. 216, 221; *Relyea v. Tomahawk P. & P. Co., supra.*

Obviously, the present cause of action, which is alleged to have accrued April 1, 1897, was not barred at the time of the passage of the latter act in August of that year.

Appellants, however, contend that such an enactment, being entirely foreign to the title of ch. 380, is not valid. We are at a loss to understand upon what appellants predicate such conclusion. Acts of legislature are not to be held void unless clearly in violation of some direct prohibition of the constitution. *Northwestern Nat. Bank v. Superior, ante,* p. 43. No such prohibition is pointed out, and we know of none, unless, indeed, appellants' counsel have in mind sec. 18 of article IV of the constitution, which, however, is confined by its terms to private and local bills. The very existence of that express requirement, with reference to such bills, implies the absence of any similar restriction upon public and general acts.

Our conclusion is therefore that no cause of action is stated against the demurring sureties, but that the complaint states facts sufficient to constitute a cause of action in tort, for negligence, against their principal.

*By the Court.*— On the appeal of *Robert A. Waite,* the order overruling his demurrer is affirmed. On the appeal of *Alexander McWhorter* and *J. A. Waite,* the order overruling their demurrer is reversed, and the cause remanded, with directions to sustain their demurrer.