COLE, Appellant, vs. VAN OSTRAND and another, Respondents.

*January 29—April 30, 1907.*

*Tax titles: Quieting title: Trusts: Pleading: Mandatory statutes: Form of delinquent return: Inclusion of printer's fee, when invalidates sale: Retroactive statute: Limitations: New title created: Judgment: Due process of law: Obligation of contract.*

1. In an action to quiet title to land, wherein plaintiff's claim was based on tax titles acquired either by the county or by plaintiff subsequent to the tax titles claimed by defendants, or upon deeds from prior owners, and no trust chargeable upon defendants in favor of the county or plaintiff was alleged, plaintiff was properly not permitted to show illegality in the sale by the county of the tax certificates upon which defendants' tax deeds (recorded more than three years before the action was commenced) were issued, as a basis for a claim that defendants' title was held in trust for the county and for plaintiff.

2. Sec. 1113, Stats. (1898), providing that the town treasurer's return of delinquent taxes shall be, "as nearly as convenient," in the form there given, is not mandatory; and although the form given shows a blank at the end for the treasurer's signature, the omission of such signature to the return itself does not render the tax sale based thereon void, where· there is annexed to the return the affidavit of the treasurer declaring its correctness, as required by sec. 1112.

3. When such return shows one amount under the heading "Total tax," and another amount under the heading "Five per cent. collection fees," and the sum of the two amounts is made the basis of the tax sale, it will be presumed that the sum so adopted is the correct total of the true tax and the legal collection fee. *Pinkerton v. J. L. Gates L. Co.* 118 Wis. 514, distinguished.

4. Where the printer's affidavit of publication of the notice of tax sale was not transmitted to the county treasurer within six days of the last publication, under sec. 1132, Stats. (1898), the inclusion of the printer's fee in the amount for which land was sold rendered invalid the tax certificate and the deed based thereon.

5. The effect of the inclusion of such printer's fee in a particular case was not changed by the subsequent enactment of ch. 35, Laws of 1905, amending sec. 1132 so as to require merely that the printer's affidavit be transmitted on or before the date fixed for the tax sale, and validating payments of such fees theretofore made by counties.

6. Under secs. 1186, 1187, Stats. (1898), when a tax deed, fair on its face and free from jurisdictional objections and those defined in sec. 1189, has been recorded for three years, a new legal title in fee simple is created in the grantee as against all the world. A later sale for nonpayment of subsequent taxes does not act upon any rights connected with the title preceding the established tax deed, but acts upon and cuts off, or fails to cut off, according to legality of the proceedings, merely the tax title created as above described.

7. Sec. 1176, Stats. (1898), providing that a tax deed "shall vest in the grantee an absolute estate in fee simple" in the land described, refers only to *valid* tax deeds.

8. When the loss of property which a party supposed he owned results from the judgment of a court having full jurisdiction to the effect that he has no title, he is not deprived of property without due process of law.

9. Where, before a statute of limitation has completely run so as to vest title by excluding the possibility of attack thereon, the period of limitation is extended, such extension does not impair the obligation of contract or deprive any one of property without due process of law.

APPEAL from a judgment of the circuit court for Price county: A. J. VINJE, Judge. *Affirmed.*

This was a suit in equity to quiet title and bar the defendants as to certain lands in Price county. The title set up

by the plaintiff rested upon the fact that the county of Price in 1899 held tax certificates for the tax sales of 1895, 1896, 1897, 1898, and 1899, and on March 29, 1899, took out tax deed upon the certificate of 1895 for the tax of 1894, which deed was recorded on March 30th; also, the county on June 22d took out another tax deed upon the certificate of 1896 for the tax of 1895, which was recorded June 23, 1899. Thereupon the county quitclaimed to the Gates Land Company, which again quitclaimed to the plaintiff, the quitclaim being accompanied in each case by an assignment of the subsequent tax certificates. Thereupon the plaintiff took out further tax deeds on the certificates for each year and has paid all subsequent taxes. This action was commenced December 17, 1901. The defendants set up title under a tax deed or tax deeds founded upon certificates of sale upon earlier taxes and recorded on and prior to June 5, 1897, more than three years before the commencement of this action. They pleaded the various statutes of limitations in protection of their deeds and attacked the validity of plaintiff's various tax deeds for certain irregularities in the tax proceedings, not apparent upon the face of the instruments nor going to the validity or groundwork of the tax. They also counterclaimed upon their tax deeds for the quieting of their title as against the plaintiff, accompanying said counterclaim with a deposit of the amount of taxes, expenses, and interest which plaintiff had invested in her taxes and tax titles. Plaintiff replied by reassertion of the facts stated in the complaint and by general denial.

The trial court found to exist certain defects in each and all of plaintiff's tax deeds; excluded all evidence in attack upon the regularity and validity of the defendants' deeds on the ground of the statutes of limitations; required defendants to pay into court the full amount of plaintiff's taxes, interest, and expenses of taking and recording tax deeds; and on March 18, 1905, rendered judgment quieting

defendants' title in accordance with the prayer of the counter-claim, from which judgment the plaintiff appeals.

*Rublee A. Cole,* for the appellant.

For the respondents there was a brief by *Barry & Barry,* and oral argument by *M. Barry.*

The following opinion was filed February 19, 1907:

Dodge, J.   It should perhaps be premised that this is one of four cases argued successively which present many questions common to more than one of them.   The briefs for appellant are industriously confused by reference one to the other; by omitting in some all discussion of questions prominent in that particular case, and devoting much space to repetition of arguments on questions arising in others, but wholly absent in the case in hand.   Thus the brief in the present case is almost entirely devoted to the contention that by reason of an illegal sale by the county of the tax certificates upon which defendants' tax deeds are founded, any title created by such deeds was held in trust for the county, and that the county's equitable title has been by quitclaim transferred to plaintiff.   This claim is set forth by pleadings in one of the other cases, but is not hinted at in the pleadings in this.   The sole claim of title which plaintiff sets forth in this case is based on the tax titles acquired either by the county or by plaintiff subsequent to the tax titles claimed by defendants, or upon deeds from prior owners.   No stretch of liberality of construction can disclose notice by pleadings of a claim by plaintiff to any trust chargeable upon defendants in favor of the county or the plaintiff.   Hence any attempt to raise that question by offers of proof below, or by argument here, properly was and must be rejected.   Any attempt to attack the county's transfer to defendants' grantor, made either by a former owner or by a claimant of merely a later tax title, would be so indirect and collateral that it could not be admitted.   *Sloan v. Rose,* 101 Wis. 523, 77

N. W. 895; *Kennan v. Smith,* 115 Wis. 463, 468, 91 N. W. 986. Some other questions, legitimately within this appeal, arise as follows:

1. As a basis of plaintiff's title, and therefore of her cause of action, are a series of tax deeds the validity of which is assailed on the ground of irregularities not appearing on the face of the deeds' and not going to the validity of the taxes which culminated in them. Numerous irregularities are urged by respondents, but three of which shall we deem it necessary to discuss in this case. Some others of them are passed upon in *Van Ostrand v. Cole, ante,* p. 446, 110 N. W. 891.

(a) It is contended that failure of the town treasurer to sign at the end the statement or return of delinquent taxes is a fatal defect. Sec. 1112, Stats. (1898), requires the town treasurer to "make out a statement of the taxes remaining unpaid" and submit it to the county treasurer, who shall, by comparison with the tax roll, ascertain that it is correct. Thereupon the town treasurer shall make affidavit to be annexed to such statement declaring its correctness and other specified facts. Sec. 1114, Stats. (1898). The sole foundation for any supposed duty to affix signature to the statement is sec. 1113, Stats. (1898), which provides that the return "may be made in tabular form and varied as facts may require, but when so made shall be, as nearly as convenient, after the following form." The illustrative form embodied in the section shows a blank at the end for treasurer's signature. We do not think the language of this section is at all mandatory. If the required facts are clearly declared and unambiguously certified, that satisfies the purpose of the law. While the steps expressly commanded by the statutes must be taken to effect a valid tax sale, we cannot feel justified in loading the process of collecting public revenues with mere matter of form and arrangement which the statutes merely suggest but do not expressly require. No

statute does so command signature of the treasurer at the end of the delinquent list or statement, but one does require signature and oath to annexed affidavit, which, we are persuaded, furnishes all essential authentication and identification. We do not overlook the fact that in *Pier v. Oneida Co.* 93 Wis. 463, 67 N. W. 702, it was said that the omission of the town treasurer's signature to the tax return, together with two other specified defects, were sufficient to render the tax sale void. But, as this court has remarked with reference to the third of those so-called defects, it was not decided that either one alone had that destructive effect. *Allen v. Allen,* 114 Wis. 615, 91 N. W. 218. As one of the defects mentioned in the *Pier Case* was undoubtedly effective, our present conclusion that the failure of signature to the tax return is not fatal is not in direct conflict with the decision there made, and does not involve a departure from the rule of *stare decisis,* as urged by the respondents.

(b.) It is objected that the tax certificates and the delinquent statements show that an excessive price was made at the tax sale by adding a sum under heading "Five per centum collection fees" to the amount specified in the delinquent return under a heading "Total amount of tax." No contention is made but that, under our tax statutes, the property is to be sold for an amount which shall include all the taxes levied thereon, plus five per cent. thereof as a collection fee, together with certain costs and expenses involved in making the sale. Sec. 1135, Stats. (1898). The contention is, however, that, under sec. 1112, Stats. (1898), it is the duty of the town treasurer to insert in his return as a single item under the heading "Total tax" the sum of such taxes, with the five per cent. fee added to them. This is predicated upon the command: "He shall make out a statement of the taxes so remaining unpaid, including the five per cent. allowed by law for collection fees;" and also upon the fact that in the form suggested by sec. 1113, Stats. (1898), there is

but one column for amounts, and that is headed "Amount of tax." As already suggested, we are not inclined to consider the form of return prescribed in sec. 1113 absolutely mandatory, if the information required to be transmitted and certified is intelligently and with reasonable certainty conveyed. It surely can do no harm that in that return is set forth in a separate column the amount of the tax not including the five per cent. collection fee, and in another column the amount of that fee. Indeed, such separation would seem more consistent with certain steps which the county treasurer is obliged to take upon the basis of the town treasurer's delinquent return; as, for example, by sec. 1114, Stats. (1898), the county treasurer, after ascertaining the correctness of a delinquent return, is·to give credit to the town treasurer for the amount of the delinquent taxes, exclusive of the five per cent. collection fee; and the severance of that fee from the body of the taxes occurs at other stages of the tax procedure. These acts, of course, would be facilitated by a form of return which carried the two parts of the total in separate columns. When, therefore, a delinquent return presents one column under heading of "Total tax" and another column under heading of "Five per centum collection fees," and the sum of the two amounts is made the basis of the tax sale by the county treasurer after, as the law requires, a careful comparison by him of the delinquent return with the tax roll, we deem it clear that the presumption *omnia rite esse acta præsumuntur* justifies the court in presuming that the amount so adopted is the correct total of the true tax and the legal five per cent. collection fee. If this be contrary to the fact the proof is easy, for the tax roll of the town remains a county record as accessible as the very records of the tax sales themselves, and it is certainly no undue burden to cast upon him who would assail the integrity of the proceedings of public officers to prove the error which he asserts. In the instant case the delinquent return was still more ampli-

fied than in the form just suggested. It presents a series of
columns still further classifying and itemizing the amount
of the burdens. Thus it contains a column "State, county,
district, and town taxes," and then a column "Road district
taxes." Then comes the column "Total amount of tax,"
and then the column "Five per centum collection fees."
The sum contained under the heading "Total amount of tax"
is the total of the two sums under the headings "Road dis-
trict tax" and "State, county, district, and town taxes."
This serves to confirm the certainty that no excess five per
cent. was included in the present sale certificates, for cer-
tainly there is no presumption that these specialized taxes
have each of them been enhanced five per cent. before being
brought together in the "Total amount of tax" column.

Upon this subject our attention is urged to *Pinkerton v.
J. L. Gates L. Co.* 118 Wis. 514, 95 N. W. 1089, where one
of the grounds of invalidity in the tax proceeding was the in-
clusion of an item described in the opinion, "For an ad-
ditional amount equal to five per cent. of the amount of the
return." As to this the court said: "No attempt is made
to justify the inclusion of such additional amount." The
printed case upon that appeal does not aid us at all in dis-
covering the true state of the tax records, and obviously the
court was led to the inference that this was an arbitrary and
additional sum in excess of the legal five per cent. collection
fee. It is not stated in that case that it was even described
as a collection fee. We did not in that case at all consider
or decide the construction to be given to a delinquent return
which contained merely a column described as "Total tax"
and an additional column for "Five per centum collection
fee." If, as seems to be suggested by one of the counsel in
this case who was also counsel in that, the court was in fact
dealing with but a single five per cent. collection fee there, we
must deplore that the record was in such shape as not to
reasonably inform us of the fact.

(c) It is shown beyond controversy, in fact it is conceded, that each of the tax certificates upon which are based any of the plaintiff's tax deeds did contain a sum of twenty-five cents for printer's fee for publishing the notice of tax sale, and that in no case was the printer's affidavit of publication transmitted within six days after the fourth publication, although such affidavits were filed before the sales took place. The statute then existing is clear and unambiguous that the county shall not be liable to the printer for such fee in the event of failure to transmit such affidavit within such six days. Sec. 1132, Stats. (1898). The question was carefully considered in *Chippewa River L. Co. v. J. L. Gates L. Co.* 118 Wis. 345, 94 N. W. 37, 95 N. W. 954, where inclusion of the printer's fee, in such case, in the amount for which the land was sold and which the purchasers at the tax sale were required to pay, was held to render irregular and invalid the certificates and deeds based thereon. That case is entirely conclusive against the present deeds under which the plaintiff claims, and they were therefore properly held irregular and invalid by the trial court.

Some contention is made that the fatal character of the inclusion of this fee has been purged by ch. 35, Laws of 1905. That statute, which went into effect March 28, 1905, amended sec. 1132, Stats. (1898), so as to merely require that the printer's affidavit be transmitted on or before the date fixed for the tax sale, and by a second section provided:

"Whenever any printer shall have in good faith heretofore published the statement and notice required by sec. 1132 of the Statutes of 1898 and has been paid by the county for such services and has neglected to transmit the affidavit of such publication to the county treasurer within the time required by said sec. 1132, such payment to said printer by said county is hereby declared valid and no part of the same can be recovered from said printer by said county."

We can find nothing in this statute which even attempts to change the relative rights of landowner and tax-title

claimant as they existed before its enactment. So far as any retroactive effect is declared, it applies only to the relations between printer and the county. If the statute were much more ambiguous it would still be our duty to give it such construction, for we should be slow to believe that the legislature had attempted to make valid an invalid tax deed, thus transposing what before its enactment was a mere lien upon land into an absolute title, to clear deprivation of the owner of his property. Further, in the present case the judgment appealed from had been entered and fully perfected before this statute took effect; hence, whatever new rule of law might have been established thereby, it could not import error into a judgment already entered.

2. To avert the result of the invalidity of her tax deeds, appellant urges certain reasons why respondents should be precluded from attacking them. First among these is the asserted fiduciary character of respondents' title and the constructive trust imposed thereon in favor of the appellant, which has already been mentioned, and plaintiff's inability under her pleadings to predicate any rights thereunder declared. She also contends, especially as against defendants' counterclaim, that by reason of lapse of more than three years from the record of respondents' tax deeds any suit based thereon is barred by sec. 1187, Stats. (1898). This contention is fully considered in the opinion by my brother SIEBECKER, and overruled, in the accompanying case of *Van Ostrand v. Cole (ante, p. 446).*

Next appellant asserts irregularities in defendants' tax deeds, and assigns error upon the rulings of the trial court that she could not impair defendants' right either to attack her tax deeds or to claim recovery under their own by proving such irregularities. This ruling was rendered effective by excluding evidence of such defects, and was based upon sec. 1188, Stats. (1898), on which respondents now rely. Plaintiff's claim of title, it must be remembered, at least as

offered to be shown by evidence, included the title existing prior to the defendants' tax deeds and also title arising upon tax deeds subsequent to defendants'. As to the first, any affirmative attack upon defendants' tax deeds is so clearly excluded by the first portion of sec. 1188, Stats. (1898), as to preclude debate or difference of opinion: "No action shall be maintained by the former owner or any person claiming under him to recover the possession . . . or to avoid such [tax] deeds." But the further language of the same section is hardly less unambiguous and conclusive in excluding any attack by the holder of a subsequent tax deed upon the efficacy of a tax deed, duly recorded for three years, to create in the grantee a complete legal title. That section provides that such deed, if fair on its face, "shall be conclusive evidence of the existence and legality of all proceedings from and including the assessment of the property for taxation up to and including the execution of such deed." When the existence and legality of all such proceedings are established, as by the presumption they are, then, by virtue of sec. 1176, Stats. (1898), such deed "shall vest in the grantee an absolute estate in fee simple in such land." The unreasonableness of a contention that, while a tax deed after the three-year limitation may have become conclusive as against all former rights and titles, still one holding by an invalid subsequent tax deed can attack it and prove that it is in fact invalid, is apparent when we contemplate the results of such a holding. If it can be so adjudged invalid, then it conveys no title, and yet, by virtue of the conclusiveness of the statute of limitations, it has been many times held that complete title is conclusively vested. The result would be that, while all former titles were cut off, no title existed in the grantee in that tax deed, and, conceding the invalidity of the subsequent tax deed, no title exists in the grantee thereof—a situation apparently insolvable save by forcible occupation for ten years. The true rule, as gleaned from secs. 1187 and

1188, is that when a tax deed, fair on its face and free from the so-called jurisdictional objections and those defined in sec. 1189, has been recorded for three years, a new legal title in fee simple is created in the grantee as against all the world. If, by reason of nonpayment of subsequent taxes, a later sale is made, that sale does not act upon any rights connected with the title preceding the established tax deed, but acts upon and cuts off, or fails to cut off, according to legality of the proceedings, merely the tax title which has been created, as above described. *Hotson v. Wetherby,* 88 Wis. 324, 334, 60 N. W. 423; *Sloan v. Rose,* 101 Wis. 523, 527, 77 N. W. 895; *Kennan v. Smith,* 115 Wis. 463, 91 N. W. 986; *Cezikolski v. Frydrychowicz,* 120 Wis. 369, 98 N. W. 211; *Wis. River L. Co. v. Paine L. Co.* 130 Wis. 393, 110 N. W. 220. We cannot doubt that the court correctly ruled with reference to the assaults upon the regularity of defendants' tax deeds.

3. Appellant presents an apparently sincere argument to the effect that, by the judgment in this case, she is deprived of property without due process of law, to the breach of the prohibition contained in the federal constitution and its amendments prohibiting a state from enacting any law having that effect. The respects in which this constitutional right of property is claimed to have been invaded are two: First. The contention is presented that by virtue of secs. 1176, 1191, Stats. (1898), the county and its grantee, the plaintiff, were vested with complete title in fee simple to the lands involved under her tax deeds, and that judgment taking such land away from her therefore deprives her of her property. It is true that sec. 1176 does provide that the tax deed "shall vest in the grantee an absolute estate in fee simple in such land." Sec. 1191, however, merely provides that land should be exempt from taxation when the county shall have received a tax deed and shall hold unredeemed tax certificates for at least two ensuing years. It

ought to be apparent at a glance to appellant's counsel, as well as to others, that the absolute fee simple ascribed to a tax deed by sec. 1176 is dependent upon the validity of that deed. No absolute fee-simple title is conferred by an unlawful or invalid deed, save as it may result from the limitations prescribed by other statutes. Hence, when it is established that the tax deeds under which plaintiff claims 'were invalid and have not been cured by limitation periods, it results that she had no title, and therefore none is taken from her. Further than this, however, any loss of property which appellant supposed she had, results from the judgment of a court of competent authority, having full jurisdiction of the subject matter and of the parties in the action, where the appellant had full opportunity to be heard, and, as we judge from the record, was heard to an adequate, if not excessive, extent. Such proceeding is the most complete due process of law known to common-law jurisprudence. Hence this contention of appellant must be overruled.

The second invasion of the guarantees of the federal constitution is predicated upon the fact that in 1899, after appellant had acquired her tax certificates and had recorded the first of the tax deeds upon which she rests, but before any limitation period had run in protection thereof, the term of limitation prescribed by sec. 1189a, Stats. (1898), was enlarged by the substitution of three years in place of nine months, so that her deed would not become impregnable to the particular form of attack covered by that section so soon as under the law existing at the time of its issue. There are two complete answers to this complaint of appellant: First. Sec. 1189a regulates the limitation only of actions to attack a tax deed because void on its face. This action concedes the *prima facie* validity of appellant's deed, and is therefore wholly unaffected by that section or by the amendments thereof. Another complete answer, however, is that, until a statute of limitation has completely run so as to vest

title by excluding the possibility of attack thereon, the period of limitation is wholly within the province of a state legislature, and is not controlled by the federal provisions against either the impairment of the obligations of contract or the deprivation of property without due process of law, provided, of course, a reasonable time be allowed after the new enactment for bringing actions if the time be shortened. Wood, Lim. (3d ed.) 34; *Koshkonong v. Burton,* 104 U. S. 668; *Campbell v. Holt,* 115 U. S. 620, 628, 6 Sup. Ct. 209; *Wheeler v. Jackson,* 137 U. S. 245, 11 Sup. Ct. 76; *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301, 305, 78 N. W. 412; *Lawton v. Waite,* 103 Wis. 244, 257, 79 N. W. 321.

We find nothing in the record which can justify a reversal of the judgment.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied April 30, 1907.